IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN WHITE, et al.,                                              NO. 08-CV-0198-SU

                 Plaintiffs,               FINDINGS AND RECOMMENDATION

      v.

RAKHRA MUSHROOM FARM
CORP., et al.,

               Defendants.

_____

SULLIVAN, Magistrate Judge:

       Plaintiffs bring this action against defendants Baljit Nanda, Treasure Valley Mushroom

Company, and Rakhra Mushroom Farm Corp, doing business as Oregon Trail Mushroom, claiming

violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207; and Oregon statutes, Or. Rev.

Stat. §§ 652.150, 653.055, and 653.261.  This court has jurisdiction under 29 U.S.C. § 216(b) and

28 U.S.C. § 1367.  Plaintiffs claim that defendants failed to pay them overtime compensation for the

work they performed that involved products not produced on defendants' farms and for work

Page 1 - FINDINGS AND RECOMMENDATION

involved in the production of mushroom compost.

Plaintiffs move for notice to similarly situated employees and to conditionally certify a collective action under the FLSA. The motion for notice of a collective action under the FLSA should be granted, for the reasons set forth below.

*BACKGROUND*

Plaintiffs are seven former employees of Rakhra Mushroom Farm Corporation. Before Rakhra shut down most of its operation in December 2007, it had a continual workforce of approximately 100 employees and operated at three sites. One site, which the parties refer to as the mix site, was devoted solely to the preparation of mushroom compost. Defendants state that Rakhra used the compost solely to grow its own mushrooms. Rakhra grew, harvested and packaged mushrooms at the other two sites, Oregon Trail Mushroom and Treasure Valley Mushroom.

Plaintiffs include individuals who worked in Rakhra's maintenance department and an individual who worked as Rakhra's on-site driver, who delivered items used for the production of mushroom compost to the mix site and transported compost from the mix site to Rahkra's other two sites. Plaintiffs allege that, when they were hired, Rahkra's personnel manager informed them that they would not receive overtime pay because the mushroom operation was a farm and that Rakhra was therefore exempt from paying overtime to its employees. All of the plaintiffs worked overtime hours and did not receive overtime pay. They also indicate that, to the best of their knowledge, other Rakhra employees worked overtime but did not receive overtime compensation.

Rakhra had many hourly positions at its sites, which, in relevant part, included cooler attendant, on-site driver, and maintenance crew member as well as individuals who weighed the mushrooms to determine the size of the harvest and who packaged the mushrooms for storage and

Page 2 - FINDINGS AND RECOMMENDATION

delivery.  Typically, about fifteen to twenty people worked in the packaging department.  Only three or four of Rakhra's hourly employees worked at the mix site.  The on-site driver transported items between Rakhra's three locations.  Rakhra also employed eight to ten maintenance workers, who performed upkeep on all of Rakhra's equipment, including coolers, packaging equipment, transport trucks and equipment at the mix site.  Although maintenance workers maintained different machines on a daily basis, plaintiffs allege that, at least weekly, they maintained machines used for mushroom processing and storage.

Rakhra sometimes purchased mushrooms from other mushroom farmers and then packaged them to sell as their own.  Rakhra indicates that, on approximately four occasions since 2004, it purchased mushrooms when it did not have enough white mushrooms to meet their orders.  Plaintiffs state that Rakhra would purchase, process and package other farms' mushrooms for a few weeks at a time.  Plaintiffs have presented evidence that, in approximately one month in 2006, Rakhra purchased shipments of mushrooms totaling over $171,000.  Rakhra also purchased mushrooms when its customers ordered exotic varieties that Rahkra did not grow.  Plaintiffs indicate that they frequently saw exotic mushrooms on Rakhra property and that, on a weekly basis, Rahkra repackaged those mushrooms into containers that bore the Oregon Trail Mushroom logo.  Rakhra indicates that the  employees who came in contact with the exotic mushrooms it purchased from other farms included, at most, one or two cooler attendants, an off-site driver who was paid on a per-trip basis, and a salaried packaging supervisor.  When Rahkra purchased white mushrooms to meet its orders, however, "certain packaging and quality control workers" also came into contact with the mushrooms.

Rahkra also regularly hauled products for other farmers, or for non-farmers.  Plaintiffs state

Page 3 - FINDINGS AND RECOMMENDATION

that Rakhra set aside a section of the cold storage area for storing those products and that Rakhra also stored the products in the freezers attached to trucks. Defendants state that most of the products it hauled for others were picked up along the route and never came onto Rakhra sites, but that they "might" have, on occasion, stored the products in coolers or on a pallet jack or forklift on site.

At the time plaintiffs filed the present motion for notice to similarly situated employees, they had not completed discovery and were awaiting defendants' production of documents. Following oral argument, the court allowed 30 days for discovery. The parties then stipulated that maintenance workers, cooler attendants, packagers, general cleanup department workers and on site drivers would receive notice.

The parties do not agree on whether quality control workers, weighers, pre-pack workers and employees at the mix site should receive notice. In addition, although defendants agreed to notice for several categories of workers, defendants dispute whether plaintiffs have met their burden for conditional certification of a collective action under the FLSA. Because defendants stipulated to notice for workers in certain job categories, the court will address defendants' arguments to the extent those arguments apply to the remaining employees in contention: quality control workers, weighers, pre-pack workers and employees at the mix site. Plaintiffs have not supplemented their briefing with additional discovery regarding those workers.

### LEGAL STANDARD

Under the FLSA, a plaintiff may bring a collective action, on behalf of employees who are "similarly situated" to plaintiff. 29 U.S.C. § 216(b); *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 907 n.9 (9th Cir. 2004). The named plaintiffs bear the burden to establish that the additional employees are similarly situated. *Norman v. Dell Inc.*, No. 07-6028, 2008 WL 2899722, at *1 (D.

Page 4 - FINDINGS AND RECOMMENDATION

Or. July 10, 2008).  Under § 216, the court has discretion to authorize the named FLSA plaintiffs

to send notice of the action to all similarly situated potential plaintiffs, who may then opt in to the

action by filing a consent in writing with the court.  *McElmurry v. U.S. Bank Nat'l Assoc.*, 495 F.3d

1136, 1139 (9th Cir. 2007); *see also Hoffmann-LaRoche v. Sperling*, 493 U.S. 165, 169 (1989).

Potential plaintiffs who do not opt  in are not bound by the judgment and may bring a subsequent

private action.  *McElmurry* , 495 F.3d at 1139.

*DISCUSSION*

Before giving notice to potential class members in an FLSA action, a court should be

satisfied that the class members are similarly situated to the named plaintiffs.  *Michaelson v. Arrow*

*Trans. Co.*, No.97-291, 1997 U.S. Dist. LEXIS 23665, at *2 (D. Or. June 6, 1997) (denying

conditional certification where plaintiffs presented no evidence that defendant has a uniform policy

of denying overtime wages).  Although § 216(b) does not define "similarly situated" and the Ninth

Circuit has not yet prescribed a standard, this district has "adopted a 'two-tiered' approach that

applies two levels of scrutiny depending on how much discovery has been completed."  *McElmurry*

*v. U.S. Bank Nat. Ass'n*,  No. 04-642, 2006 WL 3908536, at *2 (D. Or. Dec. 8, 2006).  The majority

of courts, including three circuit courts, have adopted this approach.  *Norman*, 2008 WL 2899722

at *1.

At the first step in the two-tiered process, the court considers whether the proposed class

should receive conditional certification and notice of the action.  *Id.*  The court looks to the

pleadings and affidavits submitted by the parties and applies a "fairly lenient standard."  *Id.*  The

court makes the second-tier determination once discovery is mostly complete.  *See id.*  "At the

second stage, the court weighs:  '(1) the disparate factual and employment settings of the individual

plaintiffs, (2) the various defenses available to the defendant which appeared to be individual to each plaintiff, and (3) fairness and procedural considerations.'" *McElmurry*, 2006 WL 3908536, at *3 (internal citation omitted).

###    A.    The First Tier Analysis Applies

Here, because discovery regarding quality control workers, weighers, pre-pack workers and employees at the mix site apparently remains in its early stages, the lenient, first-tier inquiry applies. Plaintiffs contend that those workers did not fall under the agricultural exemption and therefore should have received overtime compensation.[1]  Plaintiffs allege that defendants' unlawful policies include:  1) failing to pay overtime to those workers who performed work on products, or the machines that stored and processed products, that Rakhra did not raise itself; and 2) failing to pay overtime to workers who performed work solely at the mix site.

###    B.    The Purported Class Members Meet the First Tier Standard

Under the first tier, plaintiffs must show only "substantial allegations that the putative class members were together victims of a single decision, policy or plan." *Id.* (internal citation omitted). Because courts make this determination "based on 'minimal evidence,' typically it does not encompass an in-depth fact specific inquiry into topics such as job duties." *Id.*  Rather, plaintiff must only show "a common legal theory upon which each member is entitled to relief" such that the

---

[1]       The FLSA exempts "any employee employed in agriculture" from its overtime provisions. 29 U.S.C. § 213(b)(12).  The FLSA defines agriculture, in relevant part, as "farming in all its branches," including, "the cultivation and tillage of the soil," "the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities," and any practices "performed by a farmer or on a farm as incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market." *Id.* at § 203(f).  The exemption, however, only applies to practices performed "on the products produced or raised by the particular farmer or on the particular farm." 29 C.F.R. 780.158(c).

collective action serves "as an efficient mechanism for resolving a number of disputes in one consolidated action." *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) (plaintiffs did not establish uniform policy where purported class members had different job titles, payment structures, and work sites and unlawful conduct was committed by individual companies later acquired by the defendant).

Plaintiffs have adequately shown that defendants uniformly denied overtime pay to quality control workers, weighers, pre-pack workers and employees at the mix site. Plaintiffs have submitted evidence that defendants' personnel manager informed them that they would not receive overtime compensation because the mushroom operation was a farm. They also provided evidence to show that they performed work that involved non-Rakhra products at the mix site and did not receive overtime pay. In addition, the named plaintiffs indicated that other employees regularly worked overtime and, to plaintiffs' knowledge, also did not receive overtime pay.

Defendants raise issues regarding how frequently non-Rakhra products were on the site and whether the named plaintiffs' job duties are sufficiently similar to the duties of quality control workers, weighers, pre-pack workers and employees at the mix site. Defendants, however, do not dispute that packaging workers and quality control workers came into contact with non-Rakhra products, nor do they dispute that those workers did not receive overtime pay. Defendants also do not dispute that the employees at the mix site did not receive overtime pay. Thus, plaintiffs have sufficiently shown a uniform policy because the named and potential plaintiffs' claims all turn on whether defendants unlawfully employed a blanket agricultural exemption when in fact some employees' jobs involved non-Rakhra product or the production of compost at the mix site. *See Ballaris v. Wacker Silttronic Corp.*, No. 00-1627, 2001 WL 1335809, at *2-3 (D. Or. Aug. 24, 2001)

Page 7 - FINDINGS AND RECOMMENDATION

(conditionally certifying a class of workers who were required to change into clean room suits despite discrepancies regarding which workers had to do so off-the-clock ); *Thiebes v. Wal-Mart Stores, Inc.*, No. 98-802, 1999 WL 1081357, at *3 (D. Or. Dec. 1, 1999) (conditionally certifying a collective action where plaintiffs presented evidence that defendant's policy prohibiting employees from working overtime, in conjunction with a policy requiring employees to finish their duties, made working off the clock mandatory for all hourly employees).

Defendants alternately argue that conditional class certification is inappropriate because plaintiffs' claims require individualized inquiry into which workers had duties that involved non-Rakhra products or maintenance at the mix site. In support of their argument, defendants cite cases where individuals who shared a common job title performed different duties such that whether an exemption applied turned on an examination of the plaintiffs' individual tasks. *See Reich v. Homier Distrib. Co.*, 362 F. Supp. 2d 1009, 1014 (N.D. Ind. 2005) (exemption depended on whether an individual employee was responsible for loading, and if so, how often and how long and on whether loading required the exercise of discretion); *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 221 (D. Conn. 2003) (exemption turned on how much time plaintiff spent each day performing administrative tasks and whether administrative tasks predominated); *see also McElmurry v. U.S. Nat'l Bank Assoc.*, No. 04-642, 2005 WL 2078302, at *13 (D. Or. July 29, 2005) (employee's membership in the class turned on whether the employee used the challenged time-conversion chart frequently enough over a period of time to have resulted in rounding hours down such that the employee suffered a loss of minimum wage); *Clausman v. Nortel Networks, Inc.*, No. 02-0400, 2003 WL 21314065, at *4 (S. D. Ind. May 1, 2003) (exemption turned on a variety of individualized

Page 8 - FINDINGS AND RECOMMENDATION

determinations).[2]

Defendants' argument is unpersuasive.  Defendants have not explained how the duties of quality control workers, weighers, pre-pack workers, and employees at the mix site vary such that the court would have to determine what each individual employee did on a daily basis.  Plaintiffs have narrowed the class of potential plaintiffs to job categories that logically would entail contact with non-Rakhra products or the production of compost at the mix site.  Thus, the claims of the potential plaintiffs, at least at this stage, all involve either a factual determination of when non-Rakhra products were at the site, or a legal determination of whether the production of compost is an agricultural activity.  The efficiency of addressing these questions in one consolidated case serves the purposes and goals of a collective action.

Finally, defendants argue that the named plaintiffs and the workers at the mix site fall under the agricultural exemption.  It is premature, however, to decide exemption at this early stage.  Although defendants make a persuasive argument that the mix site employees are exempt because Rakhra used the compost solely for its own mushrooms, plaintiffs contend that whether Rakhra maintained a separate compost business is in dispute.  The court is unaware whether plaintiffs have completed discovery on that issue.  Defendants may renew their argument regarding exemption, and their other arguments against certification, after discovery.  At that time, the court will apply the stricter, second-tier standard.

Plaintiffs have met the minimal requirements of the first tier analysis.  Until discovery is

---

[2]    Defendants also rely on two cases in which the court denied certification at the second-tier, when the parties had already conducted significant discovery.  *Pfohl v. Farmers Ins. Group*, No. 03-3080, 2004 WL 554834, at *3 (C. D. Cal. Mar. 1, 2004), and *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497-98 (D.N.J. 2000).  Those cases, in light of the stricter standard they employ, are unpersuasive.

complete, a tier one notice to quality control workers, weighers, pre-pack workers and mix site employees is appropriate. The parties have stipulated to the form of notice. The court should therefore grant plaintiffs' motion.

*CONCLUSION*

Based on the foregoing, plaintiffs' Motion for Approval of *Hoffman-LaRoche* Notice (doc. #15) should be granted.

DATED this 11th day of March 2009



_____/s/ Patricia Sullivan_____
Patricia Sullivan
United States Magistrate Judge

**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due **March 25, 2009**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Page 10 - FINDINGS AND RECOMMENDATION